**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MYLES RAMZEE,** | : | **CIVIL ACTION NO. 1:05-CV-1328** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **LOUIS FOLINO, et al.,** | : | |
| | : | |
| **Respondents** | : | |

**<u>MEMORANDUM</u>**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) in which petitioner, Myles Ramzee ("Ramzee"), challenges a Pennsylvania state conviction. For the reasons that follow, the petition will be denied.

**I.   <u>Statement of Facts</u>**

On March 22, 1999, following a jury trial, Ramzee was convicted of first-degree murder and related crimes in connection with the shooting death of Tyrone "Carona" Hill. Ramzee filed a direct appeal pursuing a multitude of trial court errors. On appeal, the Pennsylvania Superior Court summarized the facts as follows:

> Five individuals, including [Ramzee], were charged with the murder of Tyrone Hill a/k/a "Carona". At trial, Verna Russman, a cocaine addict who sold drugs for [Ramzee], testified that the day before the murder, [Ramzee] and other defendants met and discussed a plan to rob Carona. Ms. Russman testified that on the morning of the murder, [Ramzee] and the others went to the apartment where Carona was staying; [Ramzee] walked up behind Carona and shot him in the back of the head. An autopsy revealed Carona died of a gunshot would to the back of the head. When the police arrested [Ramzee], he gave a false name and birth date.

(Doc. 12-2, pp. 2-3) (citing <u>Commonwealth v. Ramzee</u>, 758 A.2d 724 (Pa. Super. 2000) (unpublished memorandum)).   The superior court affirmed the judgment of sentence in an unpublished memorandum on April 19, 2000.   Ramzee then pursued the following issues of court error in his appeal to the Pennsylvania Supreme Court:

> 1.  Misapplication of the law in determining that the prosecution properly questioned Ramzee's right to remain silent.
>
> 2.  Error in holding that the Commonwealth could declare a witness hostile to achieve a tactical advantage.
>
> 3.  Overbroad interpretation of the parameters of bad acts evidence.
>
> 4.  Error in denying a mistrial when the Commonwealth violated Ramzee's Fifth Amendment right to remain silent.
>
> 5.  Error in denying Ramzee's request for various jury instructions.

The supreme court denied *allocatur* on November 14, 2000.

Ramzee pursued his post conviction collateral remedies by filing a timely *pro se* Post Conviction Relief Act ("PCRA") petition.   The petition was dismissed on April 15, 2003.   He appealed to the superior court raising seven issues.   (Doc. 12-2, pp. 3-5).   The order dismissing his PCRA was affirmed.   (<u>Id</u>. at p. 20).   He then appealed to the supreme court raising the following five questions for review:

> 1.  Was PCRA counsel ineffective in failing to call trial counsel at the PCRA evidentiary hearing?
>
> 2.  Did the superior court err in denying petitioner's petition to proceed *pro se* with his appeal when he claimed PCRA counsel's ineffectiveness?
>
> 3.  Did the trial court err in denying petitioner's request for appointment of a private investigator for the purpose of locating a

2

witness?

4.   Was trial counsel ineffective in failing to investigate or call Terrell Owens and Eric Baldwin or request a continuance of the trial?

5.   Was trial counsel ineffective in failing to request a bench warrant for Judith Kehl and William Kile, who failed to appear, or by seeking a continuance?

(Doc. 18-5, p. 5).  The supreme court declined to consider the appeal.  (Doc.  27-2).

On February 7, 2005, Ramzee filed his second PCRA petition raising the issue of whether PCRA counsel was ineffective in failing to call trial counsel at the PCRA evidentiary hearing.  The trial court denied the petition as untimely.  (Doc. 18-6). The superior court affirmed the denial on November 14, 2005.  (Doc. 18-7).  Ramzee then filed the present petition.

**II.**   **Claims presented in federal petition**

Ramzee raises claims of court error on the part of both the trial and PCRA courts and ineffective assistance of trial and PCRA counsel.[1]

**A.**   **Court Error**

Ramzee sets forth a number of state court error claims in his federal petition. The issues found at IV and  VII were exhausted during the direct appeal process. (Id. at p. 4, 6).

_____

[1]In his brief in support of his habeas petition, Ramzee references the issues presented by Roman numeral.  (Doc. 11-1, pp. 4-6).  For the sake of consistency, and to avoid confusion, the court will also reference the issues presented by their corresponding Roman numeral throughout this Memorandum.  Notably, because several of the enumerated issues encompass both ineffective assistance and court error claims they will appear more than once.

It is argued that the trial court erred in allowing the Commonwealth to produce evidence that the petitioner refused to give a recorded statement after his arrest. (Doc. 11-1, p. 4, issue IV). The superior court addressed the issue as follows:

> Comment by the prosecution on post-arrest silence is generally prohibited. Commonwealth v. Turner, 454 A.2d 537 (Pa. 1982). The prosecutor asked [Ramzee], "Do you remember telling the Palmerton Police that you would not give a taped interview but you would agree to answer some verbal questions?" N.T. 3/17/99, at 682. We agree with the trial court that this question focused on the form of [Ramzee's] agreement to make a post-arrest statement; it did not comment on post-arrest silence. The question shows [Ramzee] agreed to talk; he just didn't want it taped. This is a common aversion, and the question implies cooperation, not silence.
>
> In any event, any possible prejudice was cured by the trial court's cautionary instruction, given immediately after the question was asked. See Id., at 683-84. Among the factors we consider in evaluating a cautionary instruction regarding a reference to post-arrest silence are 1) "the nature of the reference, . . . whether it was a specific comment on the accused's silence . . . or merely a reference to the fact that incriminating evidence of the Commonwealth was undenied [sic] or contradicted; and 2) whether the accused's silence was exploited by the district attorney." Commonwealth v. DiPietro, 648 A.2d 777, 779 (Pa. 1994) (citing Commonwealth v. Maloney, 365 A.2d 1237, 1241 (Pa. 1976)). The prosecutor did not exploit the matter by commenting further, or suggesting the jury draw damaging inferences. As the nature of the question was not malevolent, the cautionary instruction negated any potential prejudice flowing from it.

(Doc. 28-2, pp. 4-5).

Ramzee also contends that the state court erred when Officer Jerry Betancourt was allowed to testify to a conversation he had with Ramzee prior to giving him his Miranda warnings. (Doc. 11-1, p. 4, issue VII). Specifically, the

officer testified that when he served a fugitive arrest warrant on Ramzee at his residence in Brooklyn, New York, Ramzee gave a false name and false birth date. (3/17/99 N.T. pp. 552-554). This exchange occurred before Ramzee was arrested and given <u>Miranda</u> warnings. (Doc. 28-2, p. 11). The trial court characterized this testimony as preliminary questions which did not rise to the level of an interrogation. The superior court agreed. "Requests for non-incriminating information such as name, height, weight, residence, occupation, etc. are not the type which require Miranda warnings since they are not designed to evoke an incriminating admission. <u>Commonwealth v. Jasper</u>, 587 A.2d 705 (Pa. 1991). Thus, [Ramzee's] responses were properly admitted. <u>See</u> [<u>Commonwealth v.</u>] <u>Turner</u>, [454 A.2d 537 (Pa. 1982)." (<u>Id</u>.).

Not all trial court error claims were fairly presented to the state courts. Those trial error issues identified in the brief in support of the petition as I, II, III,  III(a), V, VI, VIII, XIII, XV, XVII, XVIII, and XIX were either abandoned in the direct appeal or PCRA appeal, or not presented to the state courts at all. (Doc. 11-1, pp. 4-6). These will be discussed in the "Habeas Exhaustion" section, *infra*.

**B.**     <u>**Ineffective Assistance of Counsel**</u>

Ramzee also sets forth a number of ineffective assistance of counsel claims. However, not all of them were presented to the state courts. Specifically, those ineffective assistance issues identified in the brief in support of the petition as III, IV, VII, X - XII, XIV, and  XVI-XVII, were either abandoned in the PCRA appeal, presented to the Pennsylvania Supreme Court for the first time on appeal, or not

presented to the state courts at all.  (Doc. 11-1, p. 5).  These will be discussed in the
"Habeas Exhaustion" section, *infra*.  Those issues found at VIII and IX were fully
exhausted during the PCRA proceedings.

These issues concern whether trial counsel was ineffective for failing to
interview Terrell Owens, Eric Baldwin, and William Kile.  The PCRA court
addressed the issue as follows:

> [T]he record reflects that [Ramzee] did not call trial counsel
> at the PCRA evidentiary hearing. Thus, [Ramzee] failed to present
> any testimony from trial counsel as to why they failed to call
> Terrell Owens, Eric Baldwin and William Kile at trial.  In general,
> trial counsel may have many reasons for declining to call
> witnesses.  For example, trial counsel may reasonably conclude
> that certain defense testimony is unnecessary, confusing,
> inconsistent, unhelpful, inadmissible, and/or damaging.
>
> Indeed, many of these concerns are present with respect to the
> testimony of Owens, Baldwin, and Kile.  After reviewing the
> proposed testimony of these witnesses, we conclude that at most
> it would have attacked Ms. Russman's credibility by hearsay and
> in speculative and tangential ways.  For example, Mr. Owen's
> testimony allegedly would have shown that Ms. Russman told him
> a slightly inconsistent story from her trial testimony. At trial, she
> stated that the victim was shot in the back of the head.  On the
> other hand, she allegedly told him that the victim was struck in the
> head before being shot. According to Baldwin's pretrial statement,
> Ms. Russman allegedly asked him many times for a gun because
> she had "a nigger [she] wanted to get rid of."   According to
> [Ramzee], this testimony may have showed that Ms. Russman
> perpetrated the instant crime; however, this testimony is
> undoubtedly vague and arguably hearsay.  Finally, Kile's pretrial
> statement, indicated that Ms. Russman told him that she was
> attacked by the victim shortly before the shooting.  According to
> Ms. Russman's trial testimony, she was not attacked before the
> shooting. All of the above testimony has quite limited relevance to
> the key issues in the case, such as [Ramzee's] motive for the
> shooting and his alibi.

> Given the limited value of this testimony, the possibility that counsel had a reasonable basis for declining to call them only increases. Thus, even if the PCRA court erred in failing to hire a private investigator to find the witnesses themselves, the fact remains that [Ramzee] failed to call counsel to establish what strategy, if any, they may have had in declining to call these witnesses.

(Doc. 12-2, pp. 10-11).

Issue IX also challenges whether trial counsel was ineffective for failing to request a bench warrant or a continuance to ensure the presence of witness Judith Kehl at the trial. (Doc. 11-1, p. 5). The superior court noted that, as with the above witnesses, Ramzee simply stated how Judith Kehl's testimony would have undermined Ms. Russman's credibility. (Doc. 12-2, p. 12). "According to Kehl's pretrial statement, while in prison, Ms. Russman told Kehl that: Russman and only one other person entered the victim's apartment; before she knew it, the victim was dead; she did not intend to kill the victim; and, she was prepared to plead an insanity defense." (Id. at p. 12, n. 2). The superior court again noted that Ramzee failed to call trial counsel at the hearing to determine counsel's trial strategy and concluded that Ramzee failed to establish the "reasonable basis" prong of the ineffectiveness test. (Id. at p. 12).

## III.   **Discussion**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law

7

questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-8 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); <u>Estelle</u>, 502 U.S. at 67-8 (1991); <u>see</u> <u>also</u> <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Johnson v. Rosemeyer</u>, 117 F.3d 104 (3d Cir. 1997).

## A.    <u>Habeas Exhaustion Requirements</u>

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.  <u>See</u> 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-45 (1999).  Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts."  <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989).  Fair presentation also requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits.  <u>Id</u>.

If a petitioner presents unexhausted habeas claims to a federal court, but

8

state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); see Teague v. Lane, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show "not merely that the errors created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions." See United States v. Frady, 456 U.S. 152, 170 (1982).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger, 266 at 224. The miscarriage of justice exception applies only in extraordinary cases

9

where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray</u>, 477 U.S. at 496.

There are a number of ineffective assistance of trial counsel issues included in the habeas petition which have never been presented to the state courts. They are identified in the brief in support of the petition as issues III, III(a), IV, VII, XII, XVI. In addition, the issue found at XX was not included in any of the state court proceedings. As noted above, respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." <u>Castille</u>, 489 U.S. at 351. With respect to the above issues, Ramzee never presented the claims to any state court.

Further, the issues found at III, VI, XV and XIX, although included in the state court proceeding, were based on state law grounds, not federal law. To "fairly present" a claim, the factual and legal substance of the federal claim must be presented to the state courts in a manner that puts them on notice that a federal claim is being asserted. <u>See</u> <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982); <u>Picard v. Connor</u>, 404 U.S. 270, 277-78 (1971). It is not sufficient that a "somewhat similar state-law claim was made." <u>Harless</u>, 459 U.S. at 6. Because the factual and legal substance of the claims, which challenge evidentiary rulings and points for charge, were not  presented to the state courts in a manner that put them on notice that federal claims were being asserted, these claims are procedurally defaulted.

The trial court error issues found at III(a) and V were originally presented in the direct appeal to the superior court, but were not pursued in Ramzee's appeal to

10

the Pennsylvania Supreme Court.  Likewise, Ramzee presented a number of issues

in his first PCRA petition (Doc. 18-8) and his Amended PCRA petition (Doc. 18-9),

but did not include them in his appeal to the supreme court.  Specifically, he failed

to fully exhaust the issues found at X, XI, XIII, XIV, and XVI-XVIII.  Procedural

rules bar Ramzee from pursuing these issues in state court.[2]

Issues I and II are also procedurally defaulted.  Ramzee attempted to pursue

these issues in a second PCRA petition.  The trial court dismissed the petition as

untimely pursuant to 42 PA.CONS.STAT. § 9545.  (Doc. 18-6).  In affirming the

dismissal, the superior court noted that Ramzee had not proved that any of the

exceptions applied.  The superior court further stated that "[Ramzee] has had

ample opportunity to challenge his conviction on direct appeal and collateral

review.  Under the balance struck by the PCRA, [Ramzee's] second PCRA petition

raising previously undecided PCRA counsel effectiveness issue was untimely.

Whatever the merits of the substantive issues, the courts are without power to

decide them."  (Doc. 18-7, p. 6).

The above claims have been procedurally defaulted and the court may not

---

[2]The time period for filing a second PCRA petition has expired.  See 42 PA. CONS. STAT. § 9545(b)(1) (setting for a one year limitations period).  Ramzee raises no argument, and the record suggests no possibility, that his claims fall within an exception to the limitations period for filing a petition under the PCRA.  See 42 PA. CONS. STAT. § 9545(b)(1) (permitting petitions to be filed more than one year after judgment if the failure to raise the claim is attributable to government interference, the facts underlying the claim could not have been ascertained previously, or the claim involves rights newly recognized and retroactively applied by the Supreme Court).

consider the merits unless Ramzee establishes "cause and prejudice" or a

"fundamental miscarriage of justice" to excuse his default. <u>McCandless</u>, 172 F.3d at

260. Ramzee has not averred cause or prejudice by the default and has not

demonstrated his actual innocence such that a lack of review by the court would

constitute a fundamental miscarriage of justice. <u>Id</u>. Consequently, he is precluded

from pursuing federal habeas corpus relief with regard to all of these itemized

issues.

   B.   <u>Habeas Claims</u>

   Section 2254(d) of Title 28 of the United States Code provides, in pertinent

part, that an application for a writ of habeas corpus premised on a claim previously

adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by
> the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d). To establish that the decision was "contrary to" federal law "it

is not sufficient for the petitioner to show merely that his interpretation of Supreme

Court precedent is more plausible than the state court's; rather, the petitioner must

demonstrate that Supreme Court precedent requires the contrary outcome."

<u>Matteo v. Superintendent</u>, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court

will only find a state court decision to be an "unreasonable application" of federal

law if the decision, "evaluated objectively and on the merits, resulted in an outcome

that cannot reasonably be justified under existing Supreme Court precedent."  Id.
Further, factual determinations made by the state court are "presumed to be
correct."  28 U.S.C. § 2254(e)(1).  A petitioner may only rebut this presumption with
"clear and convincing evidence" of the state court's error.  Id.

        1.   <u>Trial Court Error</u>

Both instances of trial court error involve the Fifth Amendment privilege
against self-incrimination.  It is Ramzee's position that the "state courts
misconstrued, misapplied and/or decided [the self-incrimination issues] contrary to
clearly established federal law after recognizing the federal claim."  (Doc. 11-1, p.
28).

As a threshold matter, Ramzee asserts that the guarantee against self-
incrimination is absolute and that any reference to his silence is prohibited by the
United States Supreme Court.  (Doc. 11-1, p. 30 citing <u>Doyle v. Ohio</u>, 426 U.S. 610
(1996)).  The Fifth Amendment provides, in part, that no person "shall be compelled
in any criminal case to be a witness against himself."  U .S. Const. Amend. V.

> The starting point of our analysis is <u>Doyle v. Ohio</u>, 426 U.S. 610, 96
> S.Ct. 2240, 49 L.Ed.2d 91 (1976).  The petitioners in <u>Doyle</u> were
> arrested for selling marijuana. They were given <u>Miranda</u> warnings
> and made no postarrest statements about their involvement in the
> crime.  They contended at trial that they had been framed by the
> government informant.  As part of his cross-examination, the
> prosecutor repeatedly asked petitioners why, if they were
> innocent, they did not give the explanation that they proffered at
> their separate trials to the police at the time of their arrest.
> Defense counsel's timely objections to this line of questioning were
> overruled.  Also over timely objections, the trial court allowed the
> prosecutor to argue petitioners' postarrest silence to the jury. 426
> U.S., at 613-615, and n. 5, 96 S.Ct., at 2242-2243 and n. 5.  On

review, this Court found that the <u>Miranda</u> decision "compel[led] rejection" of the contention that such questioning and argument are proper means of impeachment. 426 U.S., at 617, 96 S.Ct., at 2244. The Court noted that postarrest silence may not be particularly probative of guilt.  We also found that because <u>Miranda</u> warnings contain an implicit assurance "that silence will carry no penalty," 426 U.S., at 618, 96 S.Ct., at 2245, "'it does not comport with due process to permit the prosecution during the trial to call attention to [the defendant's] silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony,' " <u>id</u>., at 619, 96 S.Ct., at 2245 (quoting <u>United States v. Hale</u>, 422 U.S. 171, 182-183, 95 S.Ct. 2133, 2139, 45 L.Ed.2d 99 (1975) (WHITE, J., concurring in judgment)).  Accordingly, the Court in <u>Doyle</u> held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving <u>Miranda</u> warnings, violated the Due Process Clause of the Fourteenth Amendment." 426 U.S., at 619, 96 S.Ct., at 2245.

<u>Greer v. Miller</u> 483 U.S. 756, 761-763 (1987).  More recently, the Court considered an instance where the trial court explicitly sustained an objection to the only question that touched upon the defendant's postarrest silence.  <u>Id</u>.  No further questioning or argument with respect to the silence occurred, and the trial judge specifically advised the jury that it should disregard any questions to which an objection was sustained.  Unlike the prosecutor in <u>Doyle</u>, the prosecutor in <u>Greer</u> was not allowed to impeach the defendant on silence or call attention to his silence.  <u>Doyle</u>, 426 U.S., at 619, and n. 10.  The defendant's silence was not  submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no <u>Doyle</u> violation occurred.  <u>Greer</u>, 483 U.S. 756.

In the case *sub judice*, the state trial court was clearly aware of the general

14

prohibition of comments by the prosecution on post-arrest silence and, therefore, gave a cautionary instruction immediately after the question was asked.  Ramzee's silence was not  submitted to the jury as evidence from which it was allowed to draw any permissible inference.  Upon review, the superior court reasoned that the prosecutor did not exploit the matter by commenting further, or suggesting damaging inferences to the jury.  In accordance with Supreme Court precedent, Ramzee's silence was not  submitted to the jury as evidence from which it was allowed to draw any permissible inference.  Thus, no Fifth Amendment violation occurred.

Ramzee also contends that his Fifth Amendment right against self-incrimination was violated when the trial court allowed Officer Betancourt to testify to the conversation he had with Ramzee prior to giving him his Miranda warnings. The privilege against self-incrimination does not prohibit admission of a statement made by a defendant who is not being interrogated by police, despite the absence of Miranda warnings.[3] Rhode Island v. Innis, 446 U.S. 291, 300-302 (1980).  However, statements taken during custodial interrogations without the provision of Miranda warnings violate the privilege against self-incrimination.[4]  See Thompson v.

---

[3] A law enforcement practice or procedure that is reasonably likely to elicit an incriminating response amounts to interrogation.  Rhode Island v. Innis, 446 U.S. 291, 300-302 (1980).

[4] All suspects in custodial interrogation must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to an attorney, either retained or appointed, at the interrogation. Miranda, 384 U.S. 479 (1966).

Keohane, 516 U.S. 99 (1995); Miranda v. Arizona, 384 U.S. 436 (1966).  "Custodial

interrogation" is defined as "questioning initiated by law enforcement officers after

a person has been taken into custody or otherwise deprived of his freedom of action

in any significant way."  Miranda 384 U.S. at 444, see also Oregon v. Mathiason, 429

U.S. 492, 495 (1977) (*per curiam*) (duty to give Miranda warnings is triggered "only

where there has been such a restriction on a person's freedom as to render him 'in

custody' ") (quoted in Stansbury v. California, 511 U.S. 318, 322 (1994) (*per curiam*)).

The state court concluded that "[r]equests for non-incriminating information

such as name, height, weight, residence, occupation, etc. are not the type which

require Miranda warnings since they are not designed to evoke an incriminating

admission.  Commonwealth v. Jasper, 587 A.2d 705 (Pa. 1991).  Thus, [Ramzee's]

false responses were properly admitted.  See [Commonwealth v.] Turner, [454 A.2d

537 (Pa. 1982)."  (Doc. 28-2, p. 11).  Clearly, this conclusion was not contrary to

federal law and did not constitute an unreasonable application of federal law.

## 2.    Ineffective Assistance of Counsel

To sustain a claim for ineffective assistance of counsel, a petitioner must

show that counsel's performance was objectively deficient and that this deficient

performance prejudiced his or her defense.  See Strickland v. Washington, 466 U.S.

668, 687 (1984).[5]  In evaluating whether counsel's performance was deficient, the

---

[5] The performance and prejudice prongs of Strickland may be addressed in either order, and, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Strickland, 466 U.S. at 697.

court must defer to counsel's tactical decisions, avoiding "the distorting effects of

hindsight," and give counsel the benefit of a strong presumption of reasonableness.

See id. at 689; Gov't of the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir.

1996).

Ramzee argues that the state court decision concerning his ineffective

assistance of counsel claims was contrary to federal law and constituted an unfair

application of clearly established federal law.  (Doc. 11-1, p. 46).  The superior court

set forth its standard of review as follows:

> When reviewing an order denying PCRA relief, we must
> determine whether the PCRA court's determination is supported
> by the record and is free from legal error.  Commonwealth v. Allen,
> 732 A.2d 582, 586 (Pa. 1999).  To succeed on a claim that counsel
> was ineffective, [Ramzee] must demonstrate that: (1) the claim is
> of arguable merit; (2) counsel had no reasonable strategic basis for
> his or her action or inaction; and (3) but for the errors and
> omissions of counsel, there is a reasonable probability that the
> outcome of the proceedings would have been different.  Id. at 587.
> We presume counsel is effective and place upon [Ramzee] the
> burden of proving otherwise.  Commonwealth v. Howard, 749 A.2d
> 941, 949 (Pa. Super. 2000).

> As to the first prong of the ineffectiveness test, we note that
> counsel cannot be found ineffective for failing to pursue a baseless
> or meritless claim.  Id at 957.  As to the second prong, our Supreme
> Court has cautioned against bald declarations that counsel lacked
> a reasonable basis for his or her trial strategy:

> > Generally, where matters of strategy and tactics are concerned,
> > counsel's assistance is deemed constitutionally effective if he
> > chose a particular course that had some reasonable basis
> > designed to effectuate his client's interests.  Trial counsel will
> > not be deemed ineffective for failing to assert a claim that would
> > not have been beneficial, or for failing to interview or present
> > witnesses whose testimony would not have been helpful.  Nor
> > can a claim or ineffective assistance generally succeed through

> comparing, by hindsight, the trial strategy employed with
> alternatives not pursued.  A finding that a chosen strategy
> lacked a reasonable basis is not warranted unless it can be
> concluded that an alternative not chosen offered a potential for
> success substantially greater than the course actually pursued.

Commonwealth v. Williams, 732 A.2d 1167, 1189 (Pa. 1999).

The particular standards for ineffectiveness relating to failure to call witnesses are

as follows:

> In order to establish a claim for ineffective assistance of counsel
> based on the failure to call a witness or witnesses, a defendant
> must establish that:  (1) the witness existed; (2) the witness was
> available to testify; (3) counsel was informed of the existence of
> the witness or where counsel should otherwise have known of
> him; (4) the witness was prepared to cooperate and testify for
> defendant at trial; and (5) the absence of the testimony
> prejudiced defendant so as to deny him a fair trial.

Commonwealth v. Ervin, 766 A.2d 859, 865 (Pa. Super. 2000).  (Doc. 12-2,  pp. 8-9).

The above standard of review utilized by the state court demonstrates that the state

court decision constituted a fair application of clearly established federal law.

Consequently, the petition will be denied with respect to the ineffective assistance

of counsel claims.

## IV.    **Conclusion**

Based on the foregoing determination that a number of Ramzee's claim are

procedurally defaulted, and that the remaining claims (which are fully exhausted

and properly considered on the merits) are meritless, the petition for writ of habeas

corpus will be denied.

An appropriate order will issue.


 S/ Christopher C. Conner     
CHRISTOPHER C. CONNER
United States District Judge


Dated:        December 20, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MYLES RAMZEE,** | : | **CIVIL ACTION NO. 1:05-CV-1328** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **LOUIS FOLINO, et al.,** | : | |
| | : | |
| **Respondents** | : | |

<u>**ORDER**</u>

AND NOW, this 20th day of December, 2006, upon consideration of the
petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the
accompanying memorandum, it is hereby ORDERED that:

1.    The petition for writ of habeas corpus (Doc. 1) is DENIED.

2.    A certificate of appealability is DENIED.  <u>See</u> 28 U.S.C. § 2253(c).

3.    The Clerk of Court is directed to CLOSE this case.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge